FORD MOTOR CO. *v.* UNEMPLOYMENT COMPENSATION
COMMISSION.
CLAIM OF KOSKI.

1. UNEMPLOYMENT COMPENSATION—PURPOSE OF ACT.

The purpose of the unemployment compensation act was the re-
lieving of distress resulting from unemployment and conse-
quent economic insecurity and it was intended to assist un-
employed persons who, under the limitations and conditions
imposed by the legislature, are entitled to the benefits of the
act (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended).

2. SAME—CONSTRUCTION OF STATUTES.

The court is not at liberty to read into the unemployment com-
pensation act provisions which the legislature did not see fit
to incorporate, nor may it enlarge the scope of its provisions
by an unwarranted interpretation of the language used (Act
No. 1, Pub. Acts 1936 [Ex. Sess.], as amended).

3. SAME—AVAILABILITY OF CLAIMANT FOR WORK—HOURS OF WORK.

In portion of unemployment compensation act relating to avail-
ability of an employee for work in order to be entitled to
benefits under the act, while the character of the labor for
which the claimant is available is restricted, the hours of the
day during which such employee will be available do not fur-
nish a basis for restriction where the work on a so-called
"around-the-clock" operation does not vary in character,
hence, where an employee restricted herself to certain hours,
she made herself unavailable for the work she was qualified
to perform and was not entitled to benefits (Act No. 1,
§ 28[c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 9,
Pub. Acts 1944 [1st Ex. Sess.]).

4. SAME—AVAILABILITY OF CLAIMANT FOR WORK.

Under the unemployment compensation act, one may not be re-
garded as exposed unequivocally to the labor market unless
willing and able to accept employment that he is qualified to
perform at a plant operating on the "around-the-clock" basis

regardless of what time of day work is afforded notwithstanding that theretofore work had been done by the employee only at certain hours (Act No. 1, § 28[c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 9, Pub. Acts 1944 [1st Ex. Sess]).

5. SAME—UNAVAILABILITY OF CLAIMANT BY REASON OF PERSONAL CIRCUMSTANCES.

The unemployment compensation act does not provide benefits for a worker compelled to give up his job solely because of a change in his personal circumstances (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended).

6. SAME—AVAILABILITY FOR WORK—UNDISPUTED FACTS—QUESTION OF LAW.

Where facts were not in dispute as to claimant's availability for work, the question of whether she was entitled to benefits under the unemployment compensation act may properly be regarded as one of law, involving the interpretation of a statute (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended).

7. SAME—AVAILABILITY FOR WORK—QUESTION FOR TRIER OF FACTS —EVIDENCE.

If issue as to availability of a claimant for work be one of fact and undisputed evidence shows employee was capable of doing work for which she restricted her availability to certain hours for personal reasons, holding of trial court that she was not entitled to benefits under the unemployment compensation act was correct and finding of appeal board that she was available for work within the meaning of the pertinent provisions of the act cannot be sustained (Act No. 1, Pub. Acts 1936 [Ex. Sess.], § 28[c], as amended by Act No. 9, Pub. Acts 1944 [1st Ex. Sess.]; § 38, as amended by Act No. 364, Pub. Acts 1941).

8. SAME—REVIEW BY SUPREME COURT.

Where review of a decision of the circuit court is had with respect to an award under the unemployment compensation act, the Supreme Court considers the case as before it on general appeal (Act No. 1, § 38, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

9. SAME—COSTS—PUBLIC QUESTION.

No costs are allowed on appeal from judgment of the circuit court denying claimant's right to benefits under the unemployment compensation act where question involved, relating to employee's self-made unavailability for work, was one of

public interest (Act No. 1, § 28[c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 9, Pub. Acts 1944 [1st Ex. Sess.]).

Appeal from Ingham; Eger (Paul G.), J. Submitted October 16, 1946. (Docket No. 89, Calendar No. 43,556.) Decided January 6, 1947.

Certiorari by Ford Motor Company to review determination of the Appeal Board of the Michigan Unemployment Compensation Commission that Drusilla Koski was entitled to compensation. Award reversed. Claimant and Appeal Board appeal. Affirmed.

*Malcolm L. Denise* and *Joseph A. O'Reilly,* for plaintiff.

*Foss O. Eldred,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Florence Clement Booth* and *A. W. Brown,* Assistants Attorney General, for defendant.

*Maurice Sugar* and *Ernest Goodman,* for claimant.

CARR, C. J. The claimant and appellant, Drusilla Koski, was employed by the Ford Motor Company in March, 1943, as a bench hand, and continued in such employment until October 15, 1944, when she was laid off. During the period referred to claimant worked on the afternoon shift from 3:40 p.m. to 11:40 p.m. On October 23d, following her lay-off, she filed claim for unemployment compensation under the statute.* Thereafter, and on January 17,

_____

* Act No. 1, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 347, Pub. Acts 1937; Act No. 324, Pub. Acts 1939; Act No. 364, Pub. Acts 1941; Act No. 18, Pub. Acts 1942 (2d Ex. Sess.); Act No. 246, Pub. Acts 1943, and Act No. 9, Pub. Acts 1944 (1st Ex. Sess.) (See Comp. Laws Supp. 1940, 1943, § 8485-41 *et seq.,* Stat. Ann. 1944 Cum. Supp. § 17.501 *et seq.*).

1945, she was recalled by the Ford Motor Company, and continued to be employed on the afternoon shift until April 18, 1945.   The question at issue in the case is whether claimant is entitled to unemployment compensation during the period from October 23, 1944, to the date of re-employment in January, 1945.

The unemployment compensation commission determined in the first instance that claimant had met the conditions prescribed by the statute, and was in consequence entitled to compensation.   Thereafter, however, claimant informed the claims examiner of the commission that she was not available for work except on the afternoon shift.   Because of the limitation of her availability the commission reconsidered the matter and denied compensation.   On appeal to the referee the decision of the commission was reversed.   The appeal board sustained the referee.

Claiming that the determination of the appeal board was erroneous, the Ford Motor Company applied to the circuit court of Ingham county for a writ of certiorari to review the proceeding, which writ was duly issued.   This was done pursuant to section 38 of the statute above cited, as last amended by Act No. 364, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 8485-78, Stat. Ann. 1946 Cum. Supp. § 17.540), which reads in part as follows:

"The findings of fact made by the appeal board acting within its powers if supported by the great weight of the evidence, shall, in the absence of fraud, be conclusive, but the circuit court of the county, in which the claimant resides or in which the employer's principal place of business in Michigan is located, if no claimant is a party to the case, or the circuit court for the county of Ingham shall have power to review questions of fact and law on the record made before the referee and the appeal board involved in any such final decision, but said court

may reverse such decision of said appeal board upon a question of fact only if it finds that said decision of the appeal board is contrary to the great weight of the evidence.''

Following the hearing in the circuit court, the trial judge filed an opinion holding that, under the undisputed facts in the case, claimant was not entitled to compensation. Judgment was accordingly entered reversing the decision of the appeal board. From such judgment claimant has appealed.

The question for determination is whether claimant was, during the period for which she sought compensation, available for full time work of a character which she was qualified to perform, and likewise of a character similar to work for which she had previously received wages. Section 28 of the unemployment compensation act, as last amended by Act No. 9, Pub. Acts 1944 (1st Ex. Sess.) (Comp. Laws Supp. 1945, § 8485–68 [Stat. Ann. 1946 Cum. Supp. § 17.530]), provides in part:

"Sec. 28.   *   *   *   An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that:   *   *   *

"(c)   He is able to perform full-time work of a character which he is qualified to perform by past experience or training, and of a character generally similar to work for which he has previously received wages, and he is available for such work, full-time, either at a locality at which he earned wages for insured work during his base period or at a locality where it is found by the commission that such work is available.''

Claimant's reason for limiting her availability for work to the afternoon shift was based on the fact that she had two boys, 17 and 10 years of age respectively, and wished to be at home mornings in order to awaken them, get their breakfasts, and

start them to school. It is argued in her behalf that, under the circumstances, the limitation placed by her on her availability was reasonable, and that the statute should be construed as authorizing such limitation. Emphasis is placed by counsel for claimant, and for the appeal board, on the purpose of the unemployment compensation act as set forth therein. Such purpose was the relieving of distress resulting from unemployment and consequent economic insecurity. It was intended to assist unemployed persons who, under the limitations and conditions imposed by the legislature, are entitled to the benefits of the act. The court is not at liberty to read into the statute provisions which the legislature did not see fit to incorporate, nor may it enlarge the scope of its provisions by an unwarranted interpretation of the language used.

It will be noted that section 28 (c) of the statute, quoted above in part, contemplates availability for work of the character that a claimant is qualified to perform and further requires availability for full-time work. The central thought in the subdivision has reference to the character of the labor for which a claimant is available. There is nothing in the statute to justify the conclusion that the legislature intended a claimant might limit his employment to certain hours of the day where the work he is qualified to perform is not likewise limited. It may be assumed that, in a so-called "around-the-clock" operation, the work on different shifts does not vary in character. When claimant stated she would not accept work except on the afternoon shift, she clearly made herself unavailable for work of the character that she was qualified to perform. She took such position, not for any reason connected with the character of the labor itself, but rather because of the situation in her home.

Decisions of courts of last resort dealing with the question at issue are limited in number. In *Kut* v. *Albers Super-Markets, Inc.*, 146 Ohio St. 522 (66 N. E. [2d] 643), unemployment compensation was denied to a claimant who, for personal reasons, was not available for work on Saturday. Commenting on the situation it was said:

"The statute does not designate particular days of the week. It provides that in order to be entitled to benefits a claimant must be 'able to work and available for work in his usual trade or occupation, or in any other trade or occupation for which he is reasonably fitted.' Hence, he must be available for work on Saturday if this is required by his usual trade or occupation, as in this instance."

By analogy it may be said that the Michigan statute, in prescribing availability for work as a test in determining the right to unemployment compensation, does not limit such availability to particular hours; nor does it grant the right to impose any such limitation. One may not be regarded as exposed unequivocally to the labor market unless willing and able to accept employment that he is qualified to perform. Stress is laid in the case at bar on the fact that claimant has worked for the Ford Motor Company only on the afternoon shift. Such fact, however, does not alter the situation. Clearly, she is qualified to work on any one of the three shifts in a plant operating on the "around-the-clock" basis and furnishing employment of the character that claimant is qualified to perform.

In *Keen* v. *Texas Unemployment Compensation Commission* (Tex. Civ. App.), 148 S. W. (2d) 211, the court of civil appeals of Texas upheld a finding of the unemployment compensation commission of that State that the claimant, who was enrolled as a student in the University of Texas, and undertook to limit his availability for work in such manner as not

to interfere with his classes, was not entitled to compensation. With reference to the pertinent provisions of the statute involved, it was said:

"The Texas unemployment compensation act indicates a legislative intent to provide a method of compensation for persons' who are unemployed through no fault of their own. There is nothing in the subject matter of the act, however, which would justify the presumption that the legislature intended to thereby make available for compensation benefits all persons who voluntarily resign from their employment, to enter other occupations, where the conditions are such as to render them unavailable for work and to prevent them from accepting any offer of suitable employment."

Likewise, in *Judson Mills* v. *South Carolina Unemployment Compensation Commission,* 204 S. C. 37 (28 S. E. [2d] 535), it was held that a claimant who quit her employment on her employer's third shift in order that she might care for her children, and who limited her availability for work to the first and second shifts, was not entitled to the benefits of the unemployment compensation act. It was there said:

"This statute was passed in 1936, at a time when this State, in common with the entire nation, was suffering from a prolonged depression which had resulted in industry laying off many workers, many of whom were left without the means of obtaining even the barest necessities of life. This, unquestionably, was the evil which the legislature was seeking to remedy. Unemployment due to changes in personal conditions of the employee, making it impossible for him to continue on his job had existed for many years, but there is no reason to believe that the evil resulting therefrom was any more pronounced in 1936 than it had been prior to that time. I find nothing in the act itself or in the circumstances surrounding its passage to indicate an intention on the part of the legislature to provide benefits for a worker

compelled to give up his job solely because of a change in his personal circumstances.''

In *Dinovellis* v. *Danaher,* 12 Conn. Supp. 122, the superior court of Hartford county, Connecticut, held that an unemployed married woman, who was willing to accept employment only on a day shift from 7 a.m. to 3 p.m., or similar hours, was not entitled to unemployment compensation benefits. Referring to the conditions prescribed by the governing statute for such benefits, it was said:

"Suffice it to say that among them is none which describes an offered or available employment as unsuitable because of the hours of the day or night when it is required that work' be performed, and none which excuses an actual or potential recipient of the benefits of the act from a willingness to accept employment because of the difficulty of personal adjustment to the hours thereof or the inconvenience to such person or his family. Whether if the legislation contained provisions permitting refusal of employment calling for work during hours other than the usual daylight period under normal conditions, provision for such an election would be valid, is, of course, not within the purview of the issues here. The legislature has seen fit to include no such condition and the court is without power to write it in under the guise of judicial construction.''

See, also, *Haynes* v. *Unemployment Compensation Commission of Missouri,* 353 Mo. 540 (183 S. W. [2d] 77) ; *Brown-Brockmeyer Co.* v. *Board of Review, Bureau of Unemployment Compensation,* 70 Ohio App. 370 (45 N. E. [2d] 152) ; *In the Matter of Claim of Salavarria,* 266 App. Div. 933 (43 N. Y. Supp. [2d] 899) ; *W. T. Grant Co.* v. *Board of Review of the Unemployment Compensation Commission of New Jersey,* 129 N. J. Law, 402 (29 Atl. [2d] 858).

On behalf of claimant, it is further urged, that the issue as to claimant's availability for work was factual in character, and that the circuit judge was bound to accept the determination of the appeal board. The judge, however, concluded that, since the facts were not in dispute, the question before him was one of law rather than of fact, citing in support of his position, *Haynes* v. *Unemployment Compensation Commission of Missouri, supra,* and *Judson Mills* v. *South Carolina Unemployment Compensation Commission, supra.* The facts not being in dispute, we think the question may properly be regarded as one of law, involving the interpretation of the statute. It will be noted, however, that under section 38 of the unemployment compensation act, above quoted in part, the circuit court had power to reverse the decision of the appeal board, if found contrary to the great weight of the evidence. The opinion of the circuit judge indicates clearly that he would have made such finding had he considered the issue one of fact. Under the statute we may consider the case as here on general appeal. *Palmer* v. *Unemployment Compensation Commission,* 310 Mich. 702 (158 A. L. R. 909). If treated as a factual question, the finding of the appeal board that claimant was available for work within the meaning of the pertinent provision of the statute cannot be sustained. The undisputed evidence is to the contrary.

The holding of the trial court that claimant was not entitled to unemployment compensation was correct, and the judgment is affirmed. The question involved being one of public interest, no costs will be allowed.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred. DETHMERS, J. did not sit.